CLEAR CREEK OIL & GAS COMPANY *v.* BUSHMAIER.

## Opinion delivered July 7, 1924.

1. EVIDENCE—PAROL EVIDENCE TO EXPLAIN WRITING.—While parol evidence is not competent to contradict or vary the terms of a written contract to show what is intended, it is admissible to explain the surrounding circumstances and situation and relation of the parties at the time of the execution of the contract, in order to explain all terms and phrases which are used in a technical, special or local sense.

2. OIL AND GAS—PUBLIC SERVICE COMPANY—OPERATION OF WELLS.—A public service company, operating gas wells on a royalty basis and being required to keep on hand a reserve supply of gas, is not required to operate all its wells at full capacity at all times, but has a right to operate them in such manner that each one shall furnish its proportionate part of the gas used by the consumers.

3. OIL AND GAS—MARKET PRICE AT WELL.—Under an agreement of a public service company to pay a royalty of one-eighth on the basis of the market price at the well, where there was no market price at the well, and the price paid at the nearest market was ten cents per 1,000 feet, the company was liable on that basis, deducting the cost of transporting and distributing the gas to the consumers.

Appeal from Crawford Chancery Court; *J. V. Bourland*, Chancellor; reversed.

*E. L. Matlock* and *Pryor & Miles*, for appellant.

Where there is no adequate market, the value of personal property may be fixed by proof of the value at the nearest available market, with proper additions or deductions for cost and risk of transportation. 53 Ark. 27; 92 Ark. 111; 121 Ark. 150. The acceptance of the checks for the royalties from month to month estops appellees. *Clear Creek Oil & Gas Co.* v. *Bushmaier*, 161 Ark. 26; *Clear Creek Oil & Gas Co.* v. *Brunk*, 160 Ark. 574.

*Chew & Ford*, for appellee.

HART, J. The Clear Creek Oil & Gas Company prosecutes this appeal to reverse a decree against it in favor of W. S. Bushmaier and wife for an accounting under a gas lease.

It appears from the record that the Clear Creek Oil & Gas Company is a public service corporation furnishing natural gas mainly to industrial consumers in the cities of Van Buren and Fort Smith, Arkansas. W. S. Bushmaier and his wife own a tract of land containing 106 acres in Crawford County, Arkansas. In February, 1919, by a contract in writing, they leased said tract of land to the Clear Creek Oil & Gas Company to be explored for oil and gas for the period of time designated in the lease. The lessee drilled two wells on the premises, and brought in two high-pressure gas wells. The Clear Creek Oil & Gas Company operated twenty-five wells in the gas field during the year 1921. Six of these wells are operated under contracts similar to the one in question. The lease from W. S. Bushmaier and wife to the Clear Creek Oil & Gas Company, with reference to the payment of royalty, contains the following:

"That if the said second party (appellant) shall market any gas from any well producing gas only, then the party of the first part shall receive therefor at the rate of one-eighth of all gas marketed from such wells, payable monthly on the 20th of such succeeding month."

"It is agreed that the market price of royalty gas at the well at the time shall be the basis upon which royalty shall be paid." * * *

"And it is also agreed that a failure to operate any well or wells, mine or mines, on the within described premises, when the same must be done at a loss to said second party, shall not work a forfeiture of this lease."

Some of the wells operated by the Clear Creek Oil & Gas Company in 1921, and used by it in supplying its industrial consumers, were low-pressure wells, and could not be operated in cold weather. For this reason, during the summer months the two wells in question in this case were shut off and the gas was taken from the low-pressure wells. The Clear Creek Oil & Gas Company operated all its gas wells in this field in such a manner as to give each one the proportionate amount of gas which it would furnish. Meters were placed at each

well so that the flow of gas could be measured there, and each well was given its proportionate amount of the gas furnished by the Clear Creek Oil & Gas Company to its consumers. Other owners of gas wells in that field were paid 2½ cents per 1,000 cubic feet as royalty. This was the price that other producing companies were paying for gas in that field. Industrial consumers in Fort Smith and Van Buren paid the Clear Creek Oil & Gas Company 10 cents per 1,000 cubic feet for gas, and it cost the company 3½ cents per 1,000 cubic feet to transport and distribute the gas.

It was the opinion of the court below that the lessor should receive royalty on the basis of 10 cents per 1,000 cubic feet, and that no deduction should be made for transportation and distributing charges.

The chancellor was also of the opinion that the Clear Creek Oil & Gas Company had no right to shut down the gas wells during the summer months, and divide the amount of gas which it furnished industrial consumers proportionately with the owners of the gas wells operated by it.

A decree was entered in accordance with the finding of the chancellor.

It may be stated at the outset that the question of any loss or damage suffered by the landowners by gas being drawn from their wells by reason of wells on adjoining lands does not arise under the facts of this case.

We are of the opinion that the decree of the chancellor was wrong. The lease provides that a failure to operate any well on the premises when the same must be done at a loss to the lessee shall not work a forfeiture of the lease. While parol evidence is not competent to contradict or vary the terms of a written contract to show what is intended, we are of the opinion that it is admissible to explain the surrounding circumstances, and the situation and relation of the parties, at the time of the execution of the contract, in order to explain all terms and phrases which are used in a technical, special,

or local sense. This aids the court in determining what the contract means when its language, either in its literal sense or as applied to the facts, is obscure. *Brown & Hackney* v. *Daubs,* 139 Ark. 53, and cases cited; and *Stoops* v. *Bank of Brinkley,* 146 Ark. 127.

Now, according to the evidence for appellant, which is undisputed, it was a public service corporation engaged in furnishing natural gas to manufacturing plants and other industrial consumers in the cities of Van Buren and Fort Smith. The amount of gas used at different seasons of the year varied, and, in order to supply its consumers, it was necessary to drill or lease wells producing more gas than was actually necessary to supply such consumers. In other words, it was necessary for the public service corporation, in order to properly supply consumers using natural gas furnished by it, to keep on hand at all times a reserve supply of gas. In order to do this, it drilled wells on the lands of various owners in the gas fields, and paid them either a flat rate or a royalty.

Thus it will be seen that, if the public service corporation should pay the owners of gas wells for gas which it never furnished its consumers, it would have to raise the price of gas to its consumers. It will be remembered that the public service corporation is only entitled to a fair equivalent for the service performed by it. It would be only entitled to charge the consumers a fair price for the gas furnished them.

When all these facts and circumstances are taken into consideration, we are of the opinion that the language of the lease referred to a practical operation of the gas wells, and that the company would not be required to operate all its wells at full capacity at all times, but that it might operate them in such a manner as to furnish gas to all its consumers and to keep a sufficient reserve supply on hand to meet future demands or emergencies. It is evident that it could not do this if all the wells were operated at full capacity. The result of such

a policy would be disastrous to manufacturers and other industrial plants using natural gas supplied by it.

Therefore we are of the opinion that the company had a right to operate all its wells in such a manner that each one should furnish its proportionate part of the gas used by the industrial consumers. In this view of the matter, the Clear Creek Oil & Gas Company had a right to shut down the two wells drilled on the land of Bushmaier for such length of time as might be necessary in order to give the owners of its other wells their proportionate part of the gas furnished to industrial consumers.

It is next contended on the part of the Clear Creek Oil & Gas Company that, under the lease contract, it was only required to pay Bushmaier 2½ cents per thousand cubic feet for the gas taken from his wells. This, it contends, is the price paid by other producing companies to owners of gas wells in the same field.

We do not agree with counsel in this contention. It will be noted that the contract provides that the market price of royalty gas at the wells shall be paid. The testimony shows that there was no market for gas at the wells. The Clear Creek Oil & Gas Company furnished gas from its wells to industrial plants in the cities of Van Buren and Fort Smith, which were several miles distant. Its industrial consumers paid it the sum of 10 cents per 1,000 cubic feet for gas. It cost the company 3½ cents per 1,000 cubic feet to transport and distribute the gas at these industrial plants. This left a net price of 6½ cents per 1,000 cubic feet, which we find to be the market price of the gas.

The general rule is that, where a party contracts to deliver goods or other products at a particular time and place, and no payment has been made, the true measure of damages is the difference between the contract price and that of like goods or products at the time and place where they should have been delivered.

On the other hand, if there be no market value at the place of delivery, the value of the goods or other

product should be determined at the nearest place where they have a market value, deducting the extra expense of delivering them there. The prices prevailing at the nearest place where the product can be sold, less transportation and distributing charges, show the value of such product at the place of delivery as nearly as it is possible to show such value. *Jones* v. *Railway,* 53 Ark. 27; *St. L. S. W. Ry. Co.* v. *Kilberry,* 83 Ark. 87; *Kirchman* v. *Tuffli Bros. P. I. & C. Co.,* 92 Ark. 111; *K. C. Sou. Ry. Co.* v. *Mabry,* 112 Ark. 110; and *Allen* v. *Northern,* 121 Ark. 150.

From the views we have expressed it necessarily results that the chancellor proceeded upon the wrong basis in fixing the amount due under the lease by the Clear Creek Oil & Gas Company to W. S. Bushmaier, and, for this error, the decree must be reversed.

Upon the remand of the case the chancery court will be directed to ascertain what amount, if any, is due by the lessee to the lessor for gas furnished under the rule laid down in this opinion, and for further proceedings in accordance with the principles of equity.