# WESOC CORPORATION et al *v.*
# ARKANSAS STATE HIGHWAY COMMISSION

73-273                                514 S.W. 2d 212

Opinion delivered October 7, 1974

*John C. Calhoun Jr.* and *Owens, McHaney & McHaney,* for appellants.

*Thomas B. Keys* and *Kenneth R. Brock,* for appellee.

GEORGE ROSE SMITH, Justice. Upon bringing this condemnation suit the highway department deposited $16,500 as estimated just compensation. The defendants' testimony put the figure at about three times that amount. In appealing from a verdict and judgment for $21,500 the defendants argue that the trial court erred in the admission and exclusion of evidence.

The defendant-appellants are the owner, the lessee, and the sublessee of a filling station at the corner of State Line Avenue (a major thoroughfare) and 24th Street in Texarkana. The highway department, in order to widen State Line, is taking a strip about 17 feet wide and about 140 feet long. The strip includes three self-service pumps, a large canopy, signs, wiring, and other fixtures. After the taking, according to the landowners' proof, the usuable area along State Line Avenue will be so narrow that the service station building and its appurtenances will have to be moved farther back from the street.

Evidence of relocation costs is admissible, not as the measure of damages but as an aid to the jury in its determination of before and after values. *Ark. State Highway Commn.* v. *Carpenter,* 237 Ark. 46, 371 S.W. 2d 535 (1963). To establish those costs the landowners relied upon the testimony of Ray Gammill, a Texarkana general contractor who had built more than a hundred service stations in Arkansas during the preceding 24 years. Gammill had been the low bidder for this relocation job. He testified that the costs would be $34,549.

The trial judge, on motion by the condemnor, struck Gammill's estimate of costs, on the dual ground that it included the expense of repainting the building after its removal and that it included a provision for a temporary office during the removal. Upon further redirect examination Gammill explained that repainting was a necessary part of the relocation expense, because the metal building would unavoidably be scarred in the dismantling and re-erection process. Gammill also fixed the temporary office expense at $200.

The court was wrong in refusing to change its ruling upon the motion to strike, in view of Gammill's additional

testimony. If, as Gammill asserted without contradiction, repainting was an essential step in the relocation of the structure, then that flaw in his testimony had been corrected. In such a situation it is proper for the testimony to be offered again. *Jones* v. *Railway,* 53 Ark. 27, 13 S.W. 416, 22 Am. St. Rep. 175 (1890). Upon the other point, the $200 item could easily have been subtracted if the court decided to disallow it. In fact, that is the correct procedure when an expert witness specifies an amount improperly included in his valuation. *Ark. State Highway Commn.* v. *Wallace,* 247 Ark. 157, 444 S.W. 2d 685 (1969). Thus there was no sound basis for the court's refusal to reconsider its initial ruling and admit into evidence the witness's estimate of relocation costs.

The appellants' second point for reversal stems from the trial court's action in striking Gammill's estimate of the reproduction cost of the building, on the ground that the landowners' counsel did not intend to qualify Gammill as a valuation expert. Counsel were right, for the reason stated in Jahr's Law of Eminent Domain, § 157 (1953):

> "After the proof [by a building expert] is presented, it is important to remember that the building expert cannot testify to market value. He knows what it would cost to reproduce the improvement and he should not hesitate to admit his lack of knowledge of what the improvement could be sold for. The real estate witness testifies as to the amount the improvement enhances the market value of the land."

The recommended procedure was followed in the court below. After Gammill's estimate of reproduction costs had been erroneously stricken, counsel recalled an expert real estate witness and, in chambers, made an offer of proof based upon Gammill's estimate. The testimony of both witnesses should have been admitted. In view of our ruling upon this point it seems to be unnecessary for us to consider the alternative argument that the real estate expert should have been allowed to base his testimony upon what he had learned about the original cost of the building.

A new trial being necessary, two other points must be mentioned. The court did not abuse its discretion in refusing

to strike the testimony of the condemnor's witness Shockley. Shockley's estimate of reproduction costs was based upon conversations with local builders—a procedure that was approved in *Ark. State Highway Commn.* v. *Bradford,* 252 Ark. 1037, 482 S.W. 2d 107 (1972). Shockley's vagueness about some particulars doubtless affected the weight of his testimony, but it cannot be said that he had no reasonable basis for his conclusions.

The landowners, in relocating the station, planned to put all the pumps along State Line Avenue rather than putting some of them along 24th Street, a less important thoroughfare. A witness for the highway department was allowed to testify that in the construction of a competing service station at the same intersection pumps had been installed along both streets. This was error, in the absence of a showing of points of similarity in addition to mere proximity. It was, of course, proper for the witness to testify in general terms, as he did, about prevailing practices with regard to the location of such pumps.

Reversed.